Lawrence L. SIMMONS, Petitioner,

v.

Howard L. BEYER, Superintendent, New Jersey State Prison, Trenton, and W. Cary Edwards, Attorney General of New Jersey, Respondents.

Civ. A. No. 86–4274.

United States District Court, D. New Jersey.

July 5, 1988.

Lawrence L. Simmons, Trenton, N.J., pro se.

W. Carey Edwards, Atty. Gen. of New Jersey by Jane E. Hendry, Sp. Deputy Atty. Gen., Acting Asst. Prosecutor, Office of the Passaic County Prosecutor, Paterson, N.J., for respondents.

## OPINION

DEBEVOISE, District Judge:

Lawrence L. Simmons petitioned for a writ of habeas corpus. Petitioner argues that he was deprived of the "right to appeal" by counsel's failure to file an appeal on his behalf. He also alleges that he was denied effective assistance of counsel on appeal: [1]

---

1. The state ignores the obvious Sixth Amendment claim posed by this petition, treating it instead as a case involving merely denial of a "right to appeal." The state notes that it may insist on compliance with procedural rules, in the absence of a showing that failure to comply resulted from ineffective assistance, and insists that "no such showing has been made herein." [Answer at 9.] However, petitioner raised the ineffective assistance issue in connection with his first habeas proceeding, so the state has been aware of this claim since 1980. As for a "showing," there is sufficient material on the record to judge the merits of the ineffective assistance claim. The state does not argue that petitioner has failed to exhaust state remedies. Indeed, the state is in no position to make such an argument. In this letter brief in support of his 1986 *pro se* Superior Court, Appellate Division motion for leave to file a notice of appeal *nunc*

"Defendant submits that whenever he wasn't represented by the Public Defender's office, he received assistance from one of the paralegals within the prison. Also, he should not be discriminated against because of what his attorney and Public Defender's office failed to do because he have been trying to secure an appeal ever since his conviction."

Although petitioner has provided only a cursory description of the grounds for his petition for habeas corpus, his entitlement to the writ is clear in light of the procedural nightmares which have to date prevented him from obtaining any appellate review of his convictions for murder, murder while armed, robbery, and conspiracy to commit robbery, which culminated in a sentence of life plus 9–10 years. Petitioner must be granted an opportunity to obtain the substantive review which he has sought in vain at least from the date of sentencing in December, 1977.

*Procedural History:*

Petitioner was convicted on November 16, 1977 in the New Jersey Superior Court. He was indigent, and was represented at trial by Adolph Gallucio, who was a "pool" attorney assigned by the Public Defender. Final judgment was entered on December 2, 1977, and petitioner was sentenced on December 21, 1977. At that time he was advised of his right to appeal, and advised his pool attorney that he wished to appeal. However, no notice of appeal was filed within the 45–day limit established by New Jersey law. From March 1978 to January 1980, petitioner exchanged correspondence with trial counsel and the appellate section of the Public Defender in attempts to verify the status of his appeal and/or to commence an appeal. Most of this correspondence, which will be discussed in greater

detail later in the opinion, is collected in Exhibit 17.

On March 24, 1980, after numerous attempts to verify the status of or, in the alternative, assure the filing of, a state appeal, petitioner filed for a writ of habeas corpus in federal district court in New Jersey. The court denied the petition for failure to exhaust state remedies, rejecting petitioner's argument that delays in the appellate process excused the exhaustion requirement in his case. The state argued in that proceeding that state remedies were still available to petitioner, in the form of an appeal *nunc pro tunc*, which is in theory available automatically under New Jersey law for criminal defendants who have "within time" requested that an attorney file an appeal on their behalf. The state continued to argue that state remedies were available as petitioner appealed to the Third Circuit and petitioned for *certiorari* before the United States Supreme Court. (See Exh. 4, Respondent's Brief in Opposition, at 5–6.) On May 21, 1981, the Third Circuit denied petitioner's motion for the provision of pretrial, trial and sentencing transcripts without prejudice to application for such materials in state court. On January 27, 1982, the Third Circuit affirmed the denial of a writ of habeas corpus. On June 7, 1982, the United States Supreme Court denied a petition for *certiorari*.

On July 12, 1982, petitioner filed in the trial court for post conviction relief. On December 10 and 20, 1982, the trial court held evidentiary hearings at which petitioner was represented by Michael Kingman, designated counsel. (This representation ensued after Judge Marchese wrote to the Public Defender's Office on July 15, 1982 that "I would assume that somebody from

*pro tunc,* petitioner specifically raised his Sixth Amendment claim (at p. 4), citing ineffective assistance by his attorney and the Public Defenders Office and referring to the Sixth Amendment. See also p. 8 of Brief and Appendix submitted by the Department of the Public Advocate in support of motion to file a notice of appeal *nunc pro tunc.*

Where the state does not raise such a nonexhaustion objection, I am entitled to proceed to the merits. *Reynolds v. Ellingsworth,* 843 F.2d

712 (3d Cir.1988) (citing *Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987) to effect that where State has not raised nonexhaustion as defense and where there are no "unresolved question[s] of fact or of state law [that] might have an important bearing" on the claims, federal court can reach merits of unexhausted claims). Had the state claimed nonexhaustion, it is hard to conceive a stronger case for the futility exception to the exhaustion requirement.

your office should be assigned to represent the defendant soon so that he can prepare for the hearing date." [2]

Uncontradicted testimony was presented by petitioner and his trial attorney to the effect that petitioner had wished all along to appeal and had asked his trial attorney to handle this for him immediately after sentencing. Petitioner testified that he recalled that at sentencing, the trial court "asked Mr. Galluccio as well as myself will a notice of appeal be filed, and Mr. Galluccio and myself said, yeah—Mr. Galluccio stated that he will file a notice of appeal for the Defendant, Lawrence Simmons." (December 10, 1982 Transcript, at 9–10.) [3] Petitioner testified that between conviction and sentencing, and again immediately following sentencing, Mr. Galluccio indicated that he would file a notice of appeal. (December 10, 1982 Transcript, at 10.) Petitioner also stated that he had signed some papers at trial counsel's request which were related to an appeal. (*Id.* at 11.) Petitioner testified that he continued to believe that an appeal had been filed on his behalf until he received letters dated June 27, 1979 from Ms. Rosemary Burke of the Appellate Division of the Superior Court and August 1, 1979 from the Office of the Public Defender. (*Id.* at 17.) He testified that he remained confused on January 5, 1980, when he wrote to trial counsel asking whether counsel had filed an appeal within time. (*Id.* at 18–19.) He testified that he first became aware that Galluccio had never filed a notice of appeal when he received a letter from Galluccio dated January 18, 1980. (*Id.* at 19–20.)

Petitioner's trial counsel testified at a hearing held ten days after petitioner testified, confirming certain aspects of petitioner's account and disputing others. Galluccio denied that he had agreed to prosecute an appeal for petitioner, but testified that he believed that petitioner had indicated immediately upon sentencing that he wished to appeal; he could not recall whether petitioner had also stated his desire to appeal at the time of conviction. (Exh. 19 at 3.) Although he lacked specific recollections as to what he had advised petitioner, he believed based on his typical practice that he would not have agreed to file the appeal on petitioner's behalf and would have told him that the appeal must be handled by the appellate division of the Public Defender, unless he was appointed to continue in the case. He indicated that his practice was to tell defendants that they had 45 days to appeal. Former counsel made no written memorials concerning this conversation or conversations, and took no steps to inform the Public Defender of petitioner's desire to appeal.

Trial counsel could not remember when petitioner next spoke with him concerning a possible appeal, but said that though written communications began in March 1978, after the 45–day period had expired, he believed that there were one or two phone calls before the letter. He testified that "I believe I received the phone call from him while he was either in the Passaic County jail or in the state's prison where he indicated that he wanted to appeal, although there's no memorandum to that effect in my file." (Exh. 19 at 8.) Various letters in the record from and to petitioner's trial attorney, the Public Defender Appellate Section, and the Appellate Division, suggest that petitioner originally believed an appeal had been filed, and that when he found out none had, he was confused about the proper course to follow. See Exh. 17.

Despite communications from the petitioner, his trial attorney, and a prison educational counsellor, Raymond Thompson, the Public Defender never contacted petitioner offering to file an appeal *nunc pro tunc.* In none of the materials on the record does it appear that either petition-

---

**2.** It appears that the Public Defender delayed several months in assigning counsel for this matter. At the hearing on post-conviction relief, counsel indicated in the course of a question that he had only been appointed approximately a month before the December 10 hearing. (December 10, 1982 Transcript, at 24.)

**3.** Whether this is accurate cannot be determined at this juncture, because the trial and sentencing transcripts were never prepared.

er's attorney or the Appellate Section of the Public Defender warned him either of the exhaustion requirement or of the urgency of his predicament. At the December 20, 1982 hearing on post-conviction relief, the state conceded that "[o]bviously Mr. Simmons, being indigent, had the right to be represented on appeal by the public defender's office, and someone in that office did not pursue the appeal in the proper manner." (Exh. 19 at 15.)

At the conclusion of the first state post-conviction relief proceeding, Judge Marchese noted that petitioner was in effect seeking permission to make a belated appeal, which he was without jurisdiction to grant. He signed an order denying relief, but making the following factual findings, *inter alia:*

> "3. Defendant immediately after imposition of his sentence expressed a desire to appeal to his attorney, who advised defendant that the Public Defender's Office would handle his appeal; 4. Either because he was misled or confused, defendant believed an appeal had been filed on his behalf by his trial attorney, when in fact no Notice of Appeal has ever been filed on defendant's behalf; 5. Defendant has at all times maintained his desire for appeal, as evidenced by his testimony in this matter, and his filing, *pro se*, of a number of Federal pleadings concerning his conviction in this matter; 6. At no time did defendant knowingly or intentionally waive his right to appeal." (Exh. 20.)

The Court recommended that the Appellate Division permit defendant to appeal. This order was dated July 7, 1983.

In August, 1983, petitioner sought relief from the Appellate Division in the form of leave to file a late appeal *nunc pro tunc.* The motion was made on or about August 1, 1983, and filed on August 22, 1983. A Notice of Appeal was submitted on August 17, 1983, by the Public Defender. Judge Marchese's findings concerning petitioner's desire to appeal were presented. The Passaic County Prosecutor responded in a letter of August 22, 1983, neither opposing nor consenting to the request. On September 15, 1983, petitioner submitted an amended notice of appeal. On September 22, 1983, the appeal was docketed and given a number. Five days later, on September 27, 1983, the Appellate Division denied the motion and dismissed the docketed appeal without opinion. The Appellate Division's standard order indicated that the state had filed an answer. However, defendant's counsel stated in an affidavit that he had never been served with an answer, and had been under the impression that the motion to file a late appeal was unopposed. (Exh. 18, at DA 11–12.)

On October 12, 1983, petitioner's counsel filed a motion for reconsideration or rehearing. He pointed out that under *State v. Altman,* 181 N.J.Super. 539, 438 A.2d 576 (App.Div.1981), the only determination to be made on a motion by an indigent criminal defendant for appeal *nunc pro tunc* is whether the defendant had within time asked counsel to file such an appeal. He also pointed to a Notice to the Appellate Bar relaxing Rule 2:4–4(a), which was published at 100 N.J.L.J. (1977), to the effect that:

> "[t]he Supreme Court has directed the Appellate Division to relax Rule 2:4–4(a) in favor of allowing an out-of-time appeal *nunc pro tunc* on behalf of an indigent criminal defendant in any case where it satisfactorily appears that the defendant personally, within time, requested his trial counsel *or* the Public Defender's Office to file an appeal on his behalf (emphasis added)."

Despite the apparent applicability of this guideline to the petitioner's situation, this motion was denied on October 25, 1983, again without any explanation.

The next appropriate step was to petition to the state Supreme Court for certification. Due to what Kingman, the attorney assigned to the case by the Public Defender's Office, described as "cumbersome procedures" of communication between assigned counsel and the Public Defender, the petition for certification was filed on November 4, 1983, several days late. (Exh. 5.) Kingman filed a memorandum and affidavit explaining the delay, and requesting

an extension of time for filing. In his substantive papers, *see Petition for Certification*, Exh. 18, counsel repeated the state court rule arguments already made, but made no effort to raise any constitutional argument, such as that defendant had been denied effective assistance of counsel or that the denial of an appeal violated due process.[4]

At this point, the state's posture—which had previously been one of neutrality—was reversed. The state responded to the request for an extension of time for the filing of the Petition with a letter dated November 18, 1983, reading:

> "The state is in receipt of defendant's motion for extension of time to file Petition for Certification. Defendant fails to indicate the length of time required to file a petition. Also, in view of the age of this matter, the state will not consent to this motion."

(Exh. 16.) The state sent letters in January 1984 (Exh. 3) and September 1984 (Exh. 6) opposing the petition for certification of the denial of post-conviction relief on the grounds that no colorable issue or demonstration of probable merit had been made. The state also criticized Judge Marchese's factual findings. Counsel did not attempt to set forth grounds for the requested appeal, but rather pointed out that under case law and the Supreme Court Notice directing that appeals *nunc pro tunc* be granted liberally, no indication of issues which would be presented could be required. Counsel indicated that he could not indicate what issues would be raised, since he had neither represented petitioner at trial nor had an opportunity to review the transcript, since none had been prepared.[5] Seven and a half months later, on June 19, 1984, the state Supreme Court granted petitioner the extension of time which he sought. On November 7, 1984, the court denied the petition for certification, without opinion.

On May 9, 1986, petitioner submitted a *pro se* notice of motion indicating that he "will move before the Superior Court, Appellate Division, in the above titled action, for entry of the following relief with reliance on the attached letter brief and appendix: 'An order allowing defendant to file *nunc pro tunc* Notice of Appeal.'" In a letter dated May 15, 1986, the prosecutor wrote to the clerk of the Appellate Division that "we oppose defendant's *pro se* motion for leave to file a Notice of Appeal *nunc pro tunc*, based upon our understanding of the matter's procedural history. Our records indicate the matter has already been disposed." (Exh. 7.) In a letter dated August 7, 1986, the state submitted opposi-

---

4. Petitioner's counsel had suggested a constitutional dimension in his opening remarks at the December 10, 1982 hearing on post-conviction relief: "What I am seeking, Your Honor, today is, by way of fact finding, under the case of *State v. Allen*, A–L–L–E–N., at 99 N.J.Super. 314, 239 A.2d 675 (Law Div.1968) involving a somewhat similar matter of a defendant who filed a Post–Conviction Relief petition where he alleged, among other things, that he had not been advised of his right of appeal and had been deprived of effective assistance of counsel." Moreover, the first federal habeas action served to place the state on notice of petitioner's constitutional claims, despite the failure to raise them again in briefs on the motion for post-conviction relief in the form of an appeal *nunc pro tunc*. Petitioner's counsel alluded to the Sixth Amendment argument in questioning petitioner during the December 10, 1982 hearing on post-conviction relief: "Q: And was one of the arguments or the claims that you made in that proceeding the fact that you were denied assistance of Counsel in pursuing your appeal in New Jersey? A: Yes, sir. I was denied the right as to Counsel and to appeal the lowest court decision to a higher court. They never assigned me to account for anyone."

5. The state appears to suggest that failure to comply with N.J.Ct.R. 2:8–1(a), which provides that "[o]n motion for leave to appeal the brief shall include argument on the merits of the issues sought to be appealed" constitutes a procedural default barring habeas review under *Wainwright v. Sykes*. This is not a tenable position, however. There is no indication that the state court's response to the petition was motivated by a desire to enforce the procedural rule. The state court decisions were without opinion, and the January 6, 1984 and September 14, 1984 letters from the Attorney General suggesting that failure to brief the merits justifies rejection of the proposed appeal do not allude to the rule but instead rely on two largely irrelevant civil cases, *James v. Francesco*, 61 N.J. 480, 295 A.2d 633 (1972) and *Gnapinsky v. Goldin*, 23 N.J. 243, 128 A.2d 697 (1957), both of which *permitted* belated appeals rather than penalizing clients for the errors of their attorneys.

tion papers which noted the disposition of petitioner's previous motion to file an appeal *nunc pro tunc.* On August 12, 1986, the Appellate Division denied petitioner's motion to proceed as an indigent and to file a notice of appeal *nunc pro tunc.*

The instant petition for a writ of habeas corpus was filed in October 1986.

*Factual Finding Concerning Request to Appeal*

■ The state argues that petitioner has already had a "full and fair opportunity" to litigate this matter, and that habeas relief should be denied because he has "fail[ed] to carry his burden of demonstrating that (1) the state court hearings were vitally flawed, and (2) the state court findings were not supported by the record." This argument is peculiar and unpersuasive in the context of this case.

The only state court which made a relevant "finding"—the state trial court[6]—found that petitioner had expressed a desire to appeal immediately after sentencing, and never voluntarily and knowingly waived the right to appeal. The courts which rejected petitioner's attempt to appeal *nunc pro tunc*—the Appellate Division and Supreme Court—did not comment on this factual finding; rather, they denied the petition for appeal *nunc pro tunc* without any explanation.

While the failure of the state courts to explain their reasoning makes it difficult to determine whether they doubted the trial court's factual finding, an examination of the state's arguments as to why the Appellate Division and Supreme Court *should* deny petitioner's motion demonstrates that the denial does not necessarily indicate any doubts concerning the factual finding. The state's chief objection to the motion for a belated appeal was that petitioner had failed to show a likelihood of success on the merits, which, as will be discussed below, he was not required to do. Moreover, the state persistently suggested that the Appellate Division had "discretion" as to

whether to hear the late appeal. Assistant Prosecutor Mongiarno indicated in his introductory remarks at the December 10, 1982 hearing on post-conviction relief that "it would appear that if the Court were satisfied here a timely request had been made by Mr. Simmons to have his appeal filed, then regardless as to whose fault it was that the appeal was never filed, the hearing herein could, in essence, be ruled for the equivalent or tantamount to the filing of a notice of appeal, *and then, of course, it would be up to the Appellate Division as to whether or not they would wish to entertain an appeal at this time, but I think that it would, in essence, be the burden of the petitioner to show that he did, in fact, make a request for his appeal in a timely fashion (emphasis added)."* (December 10, 1982 Transcript, at 4.) The state in opposing petitioner's motion for certification argued that plaintiff had failed to follow proper procedures and concluded that "[w]hile defendant may have expressed a desire to appeal after his conviction no seasonable application was filed with the Appellate Division. *See Gnapinsky v. Goldyn,* 23 N.J. 243, 128 A.2d 697 (1957). Under these circumstances it cannot be concluded that the Appellate Division *abused its discretion* in denying relief and dismissing this extremely tardy appeal" (emphasis added). (Exh. 6).

Thus, the state court factual finding in this matter *supports* the petitioner's position. Given that there was a full and fair opportunity to litigate that issue, in which the state essentially failed to contest petitioner's account, I may be required to accept the state court factual finding. 28 U.S.C. sec. 2254(d) creates a strong presumption that state court factual findings were correct, which applies when habeas petitioners attempt to challenge such findings. In the instant matter, had the state court concluded after its hearing that petitioner had not indicated within time his right to appeal, that finding would have been entitled to deference. *See, e.g., Nor-*

---

**6.** The trial court lacked power to order an appeal, but the testimony was developed before Judge Marchese, as in *State v. Allen,* 99 N.J.Super. 314, 239 A.2d 675 (Law Div.1968), where the Law Division made findings that petitioner had been denied due process by counsel's failure to advise him of the right to appeal.

*ris v. Wainwright,* 588 F.2d 130 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979) (deferring to state court fact finding that counsel suggested that petitioner appeal but petitioner had refused). Given that the state trial court reached the opposite conclusion after seeing and hearing the witnesses, it would be inequitable and unreasonable to hold that the state is not bound by that finding. The general concerns of comity with state courts apply here, even if the literal terms of sec. 2254(d) do not. *United States ex rel. Patrick v. Russell,* 353 F.Supp. 1269 (E.D.Pa.), *aff'd,* 485 F.2d 683 (3d Cir.1973), *cert. denied,* 414 U.S. 1145, 94 S.Ct. 898, 39 L.Ed.2d 100 (1974) (relationship between state and federal judiciaries is one of mutual respect, and although at certain times it becomes necessary for a federal court to consider and pass upon matters which are primarily within the sphere of the state courts, particularly in the habeas corpus area, these occasions should be limited by extreme necessity).

Even if I am not required to accept the instant state court factual findings, the evidence introduced shows that petitioner expressed a desire to appeal and failed to do so because he was either confused or misinformed about the proper course to take. The state's suggestion in its September 14, 1984 letter [Exh. 6] that "[t]he record ... fails to support defendant's claim that he properly requested an appeal within time as he was instructed by his counsel and the court at the time of his conviction" is unelaborated and without merit. It appears to be based on two untenable assumptions: that only written correspondence "counts" as evidence, and that any tension between the lawyer's testimony and the client's establishes that the client is lying.

The state trial court heard and evaluated evidence not only from petitioner himself but from trial counsel. He was in a far better position in 1982 to reconstruct the nature of the communications breakdown which apparently occurred than I would be were I to hold an evidentiary hearing in 1988. He was unable to reach a definitive conclusion on what trial counsel had or had not said,[7] but found that petitioner had been either "confused or misled" into thinking his appeal was being taken care of. He did reach clear conclusions on the key issues, namely that petitioner did express a desire to appeal within time and never knowingly waived the right to appeal. I will respect that factual finding.

*Petitioner's Constitutional Claim*

The record compels but one conclusion: that petitioner has been deprived of his due process rights and of his Sixth Amendment right to effective assistance of counsel.

The state notes correctly that courts have recognized no intrinsic constitutional right to appeal a criminal conviction. However, doctrinal development has not stopped with this truism. Rather, courts have recognized that states have created appeals as of right and that such appeals are a crucial stage in criminal proceedings. In *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed.2d 891 (1956), the Supreme Court held that due process and equal protection require that indigent defendants be provided with a trial transcript to assist in the preparation of appeals. Justice Black observed that:

> "In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial. [It] is true that a State is not required by the federal constitution to provide appellate courts or a right to appellate review at all. [But] that is not to say that a State that does grant appellate review can do so in a way that discriminates against some

---

7. Contrary to the view suggested by the prosecution letter of September 14, 1984 opposing the petition for an appeal *nunc pro tunc,* it is not the rule in evidentiary proceedings involving convicted persons challenging the adequacy of counsel that all conflicts in testimony must be resolved in favor of counsel's account. Here, the trial judge heard both accounts, and did not reach the conclusion that counsel had so clearly explained the proper procedure that petitioner's failure to pursue constitutes a deliberate circumvention of proper appellate procedures.

convicted defendants on account of their poverty....

All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial portion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside.... There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

This principle was subsequently extended to appointment of counsel on the first appeal as of right for indigent defendants in *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). In *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court held that the right to assistance of counsel on appeal encompasses a right to effective assistance.

There can be no doubt that the appeal petitioner sought was one of right. New Jersey's Constitution guarantees an appeal as of right to the Appellate Division from the Law and Chancery Divisions of the Superior Court. N.J. Const. Art. 6, sec. 5, para. 2. See *State v. Fletcher,* 174 N.J.Super. 609, 614, 417 A.2d 106 (App.Div.1980); *Midler v. Heinowitz,* 10 N.J. 123, 89 A.2d 458 (1952). Sentencing also "shall" be subject to review by an appellate court. N.J.S.A. 2C:44–7. An examination of the facts of this case, as found by the only state court to analyze them on the record, leaves little doubt that petitioner's access to the appellate procedure was fundamentally undermined by ineffective assistance on the part of trial counsel and the Public Defender service.

Immediately after sentencing, petitioner was abandoned by appointed trial counsel, apparently because counsel's arrangement with the state precluded further payment for services. Trial counsel did not file a notice of appeal. He made no active effort to put petitioner in contact with persons who could assist in his appeal. Rather, he referred an indigent client who had just been sentenced to life imprisonment to a large bureaucracy, apparently providing no name or phone number. Even after receiving clear indications by at least one phone call and more than one letter that petitioner had not filed an appeal, although he wished to, counsel sent a perfunctory letter to petitioner which conveyed no sense of urgency and no concrete guidance as to whom he should turn or what he should do. Counsel did not inform petitioner that he had already missed an important deadline.

No written record has been supplied to me of counsel's withdrawal from the case, and the only court to have taken testimony on the matter found that petitioner had not understood that trial counsel intended to withdraw. Although counsel appears to have lacked specific recollection of these events, he reported that he explained to defendant that he would be unable to represent him unless he were appointed to do so. There is no indication that he promptly advised petitioner that he had not been so designated.

This conduct must be examined in light of the relevant professional responsibility standards. The Supreme Court has found ABA–promulgated professional standards highly relevant in fixing the dimensions of "effective assistance of counsel." In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that:

"More specific guidelines are not appropriate. The Sixth Amendment refers simply to 'counsel,' not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

The Third Circuit has also applied this approach. *See In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 160 (D.N.J. 1984), *cert. denied sub nom. Cochrane & Bresnahan v. Plaintiff Class Representatives*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985) (*citing Strickland v. Washington* for proposition that "[w]e believe that the appropriate guidance for finding the current national standards of ethical norms lies in the standards promulgated by the American Bar Association.")

By the current standards, which were adopted in August 1978, petitioner's counsel was ineffective. The relevant standards are contained in *ABA Standards, Criminal Appeals: Transition from Trial Court to Appellate Court sec. 2.2* (1970); *The Defense Function After Conviction secs. 8.2, 8.3* (1971). *Criminal Appeals Standard* 21–2.2 (approved August, 1978) is entitled "Trial counsel's duties with regard to appeal," and provides that:

> "(a) Counsel, whether retained or appointed to represent a defendant during trial court proceedings, should continue to represent a sentenced defendant until a decision has been made whether to appeal and, if an appeal is instituted, to serve the defendant at least until new counsel is substituted, unless the appellate court permits counsel to withdraw at an earlier time. (b) Defense counsel should advise a defendant on the meaning of the court's judgment, or defendant's right to appeal, on the possible grounds for appeal, and of the probable outcome of appealing. Counsel should also advise of any posttrial proceedings that might be pursued before or concurrent with an appeal. While counsel should do what is needed to inform and advise defendant, the decision whether to appeal, like the decision whether to plead guilty, must be the defendant's own choice."

The Commentary notes that:

> "[r]egardless of whether trial counsel will also represent the defendant on appeal, there is the continuing responsibility of trial counsel to provide assistance to a client beyond entry of final judgment in the trial court. This is a critical stage in a criminal prosecution, and no defendant should lack legal counsel during this period."

The Commentary explains that "[t]his standard, in stressing the continuing responsibility of the trial attorney, seeks to avoid the problem of a hiatus in legal representation during a critical period."

Even before those standards went into effect in August, 1978, counsel were required to take active steps to protect the interests of clients whom they would not be representing on appeal. In New Jersey, the Supreme Court had undertaken to protect a defendant's right to appeal after sentencing in R.R. 1:12–9(c), which provided that "[t]he representation of the defendant by counsel so assigned shall continue through trial, and in the event of a conviction, shall continue through sentencing and shall include advising the defendant with respect to his right to appeal *and, if he desires to appeal, the preparation and filing of the notice of appeal and of an application for the assignment of counsel on appeal* (emphasis added)." In *State v. Allen*, 99 N.J.Super. 314, 239 A.2d 675 (Law Div.1968), the court recognized the "clearly developed judicial awareness of the need for adequate representation for criminal defendants immediately after trial," 99 N.J.Super. at 318, 239 A.2d 675, and held that a defendant who is not advised of right to appeal and right to counsel to prosecute an appeal is deprived of right to effective assistance of trial counsel, even if counsel studied the trial record and determined there were no appealable grounds.

▇▇▇ Counsel who wish to withdraw from representation after trial must take active measures to protect their clients' right to appeal. *Cf. Houston v. State*, 263 Ark. 607, 566 S.W.2d 403 (1978) (finding no ineffective assistance where lawyer who had been paid small part of trial fee and nothing for appeal advised petitioner of right to appeal and possibility of consulting prison attorney, informed petitioner's mother of right to appointed counsel, and wrote to petitioner, enclosing notice to appeal and motion to appeal *in forma pauperis* and

explaining time limits); *Henry v. Hopper*, 235 Ga. 196, 219 S.E.2d 119 (1975) (finding no ineffective assistance by counsel who testified that he had informed petitioner of appellate rights and counsel's inability to continue representing him, that petitioner indicated that family and friends were seeking other counsel for appeal, and that counsel had petitioner sign pauper's affidavit which would be used only if petitioner contacted him to say that he was unable to obtain other attorney). In contrast to those cases, petitioner's trial counsel took no measures to protect his client's interests, either by placing him in contact with specific individuals who could assist him with an appeal or by taking the simple procedural steps necessary to protect the right to appeal.

Nor was the conduct of the Public Defender's Office, upon which New Jersey relies to meet its constitutional obligations under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), more impressive. The state may not evade its obligations to provide indigent defendants with effective assistance of counsel on appeal by creating and then taking advantage of a gap in representation between the time of sentencing and the time an appeal is filed.

Petitioner wrote in March 1978 and May 1979 (Exh. 17) to the Public Defender asking about the status of his appeal; there is no record of any response until August 1, 1979. The record contains no indication that anyone at the Public Defender's Office made any effort to inform petitioner that he should pursue state remedies *pro se,* or to assist him in seeking leave to file a late appeal prior to the Supreme Court's final rejection of his first petition for a writ of habeas corpus.

An August 1, 1979, 4–line letter from the office of the Public Defender's Appellate Section read:

This will acknowledge receipt of your letter. We have no record of your appeal. By copy of this letter we are asking Mr. Galluccio to contact us and per-haps we can file out of time. We will keep you informed.

There is no indication that anyone in the Public Defender's Office ever picked up a telephone to speak with petitioner or with trial counsel concerning this matter.

Petitioner's March 1980 filing of a federal habeas petition apparently spurred the Public Defender to write directly for the first time to the pool attorney who had represented petitioner at trial. A letter dated April 16, 1980, from James Smith, Deputy Public Defender, to trial counsel Gallucio, read:

I have been advised by the Passaic County Prosecutor's Office that Lawrence Simmons has filed a petition for *habeas corpus* claiming that he was denied his right to appeal in the New Jersey courts. Our office has no record of ever being requested to file an appeal in Mr. Simmons' behalf. I am advised that you represented Mr. Simmons as a pool attorney, designated by our Paterson trial office. If this is the case, will you please advise me whether Mr. Simmons had ever indicated that he wished to appeal his conviction for murder. If he did request that an appeal be filed within a reasonable time, I would be willing to file a motion for leave to appeal *nunc pro tunc* if he still desires. Any information you can give me on this subject would be appreciated.

(Exh. 21, at 12A.) There is no indication that a copy of this letter was sent to petitioner. Trial counsel replied promptly that defendant had "several times" indicated a desire to appeal, though he did not specify the time at which such requests were made, and wrote that in his opinion "there are substantial issues for appeal." (Exh. 21, at 13A.) The record does not contain any indication that the Public Defender followed up on this communication in any way.

The Public Defender's Office apparently did not take any active role in this matter until July 1982, when Judge Marchese asked the office to provide representation for petitioner in connection with his petition for post-conviction relief, which was filed

after his first federal habeas action had run its full course through the Supreme Court. (Exh. 17, at DA 20.)

Both trial counsel and the Public Defender, which was charged with selecting and supervising trial counsel and arranging appellate representation, handled this case in an extremely desultory fashion. Numerous requests by petitioner prompted occasional correspondence, but no action to ensure that petitioner's rights would be protected.

In any event, petitioner's claim can be resolved without determining who was at fault in the breakdown of legal representation. Some states clearly fix responsibility for protecting an indigent defendant's interests in the critical transition from trial to appeal. *See, e.g., Williams v. United States,* 402 F.2d 548, 551 (8th Cir.1968) (court rule "squarely places the obligation on court-appointed counsel to advise his client of the right to appeal and to file upon request a timely notice of appeal, and provides such counsel will continue to represent the defendant unless and until relieved by the court"). The Delaware Supreme Court set forth general standards in *Erb v. State,* 332 A.2d 137 (1974), based upon its finding of "appalling and unnecessary delay in prosecution of the appeals resulting from a lack of coordination between trial counsel and the Public Defender and the failure of both of them to meet their responsibilities as counsel of record." The court noted that "[t]rial counsel did not order a transcript of testimony nor provide the Public Defender with pertinent information as to errors of law on which the appeals are based, and the Public Defender did not meet his responsibility to prosecute the appeals with diligence." *Id.* at 139.

New Jersey rules do not appear to specify who shall fill this transition function for indictable offenses; they merely prescribe that the Public Defender is responsible for representation both at trial and on appeal. R. 3:27–1. (The commentary to the old version of Rule 3:27–1, in Del Deo, 1A *N.J. Practice Court Rules Annotated* indicates that "[c]ounsel assigned pursuant to this rule, serve through direct appeal and such post-conviction proceedings or appeals as would warrant assignment of counsel.") Interestingly, for nonindictable offenses the responsibility for arranging a transition is more clearly specified, and is placed with trial counsel, who must file a notice of appeal, and who is responsible for prosecuting the appeal if he or she fails to file with the notice of appeal an application for assignment of counsel on appeal. R. 3:27–2.

Wherever the fault lies, it is clear that, as the state conceded at oral argument in the hearing on post-conviction relief, the state's system for providing representation to indigents did not work properly in this case. Where systems of public defense break down in this manner, the rights to effective assistance of counsel and to due process are violated. *See, e.g., Cf. Cleaver v. Bordenkircher,* 634 F.2d 1010 (6th Cir. 1980), *cert. denied sub nom. Sowders v. Cleaver,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981) (state constitutional right to appeal "cannot be regarded as having been vindicated by the appointment of a public defender who is so overloaded with work as to be unable to service his appeal as of right"); *Harris v. Kuhlman,* 601 F.Supp. 987 (E.D.N.Y.1985) (Weinstein, J.) (state's failure to screen, administer, and monitor appointed attorneys infringed petitioner's due process and equal protection rights); *In re Parizo,* 137 Vt. 365, 404 A.2d 114 (1979) (in case involving both appointed and retained counsel, court remanding for hearing on question of ineffectiveness in that neither lawyer, each apparently proceeding on the basis that the other was to file the necessary notice of appeal, filed the requisite notice in time to preserve review); *Gaines v. Manson,* 194 Conn. 510, 481 A.2d 1084, 1094 (1984) (delay in appeals resulting from overworked and understaffed Public Defender's Office constituted violation of Fourteenth Amendment); *Blankenship v. Commonwealth,* 554 S.W. 2d 898 (Ky.App.1977) (appellant denied effective assistance of counsel where record on appeal was not perfected because of misunderstanding between appointed trial attorney and public defender's office).

Other courts have recognized that defective procedures could violate due process,

but have found inadequate showing that they did so in the particular case at hand. *Cf. Siers v. Ryan*, 773 F.2d 37 (3d Cir.1985) ("zone defense" procedures not so defective as to deprive petitioner of effective assistance of counsel, in absence of showing of any specific instances of ineffectiveness by counsel who represented him); *Greenfield v. Gunn*, 556 F.2d 935 (9th Cir.), *cert. denied*, 434 U.S. 928, 98 S.Ct. 413, 54 L.Ed.2d 288 (1977) (while "horizontal representation" may be inevitable result of constraints on public defender's office, unless each attorney ensures that all who participate are well-informed, "there is some danger that the defendant may be deprived of effective legal assistance").

Here, petitioner has not merely exposed a breakdown in the process for handling the transition from trial to appellate representation, but has shown that he was the direct victim of the procedural defect. Thus, even if trial counsel was not obliged to do more to protect petitioner's right to appeal, the deprivation of representation as a result of the systems or lack thereof of the Public Defender's Office is equally cognizable as a violation of the Sixth Amendment right to effective assistance of counsel. *Cf. Boyd v. Mintz*, 631 F.2d 247 (3d Cir.1980) (when public defender's late entry and consequent late filing of suppression motion resulted in failure to consider motion, there was breakdown in state system such that Fourth Amendment claim could be litigated in habeas action despite *Stone v. Powell*).

In summary, the denial of effective assistance cannot be excused by confusion over whose responsibility it was to comply with petitioner's request that an appeal be brought. Here, petitioner essentially "fell through the cracks" of the system New Jersey has established to represent indigents in criminal matters. His access to counsel has been fundamentally shaped by his poverty: the counsel assigned to represent him at trial considered his responsibility to have been discharged at a point at which a private attorney would have remained clearly obligated under the Code of Professional Responsibility to continue representation or take active steps to ensure that petitioner would obtain new retained or appointed counsel. The Public Defender's Office failed to oversee the attorney to whom it had delegated representation, and failed to inquire into the wishes of the petitioner, who had just been sentenced to life imprisonment. After the 45–day period had expired, but during the period when a *nunc pro tunc* appeal would have been granted routinely, the office took no energetic steps to secure such an appeal. Petitioner's inability to escape from this pattern of lackadaisical representation was the result of his poverty. Accordingly, his due process rights have been violated.

Numerous courts have held that where defendants had expressed a desire to appeal within prescribed time limits but, because of attorney's failure to comply with necessary procedures, failed to do so, the rights to due process and effective assistance of counsel have been denied. *See, e.g., Doyle v. United States*, 721 F.2d 1195, 1198 (9th Cir.1983) ("[w]hether to take an appeal is a fundamental decision that lies with the defendant," and where counsel's failure to file opening brief resulted in dismissal of appeal, defendant was entitled to have sentence vacated in order that appeal could be perfected); *Gilbert v. Sowders*, 646 F.2d 1146, 1150 (6th Cir.1981) (it is well settled in circuit that trial counsel's failure to perfect an appeal or to perform procedural duties necessary to prosecute appeal denies due process); *Cantrell v. State of Alabama*, 546 F.2d 652 (5th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977) (failure by counsel to perfect appeal is denial of effective assistance); *Macon v. Lash*, 458 F.2d 942, 950 (7th Cir.1972) (petitioner who had evidenced desire to appeal within time was entitled to order discharging him from custody unless appeal on merits was provided within a reasonable period); *Williams v. United States*, 402 F.2d 548, 552 (8th Cir.1968) (period between sentencing and expiration of time for appeal is critical stage of criminal proceeding and right to counsel covers such period); *Wainwright v. Simpson*, 360 F.2d 307 (5th Cir.1966) (failure by counsel to commence simple steps for appeal bla-

tantly denies due process). Thus, petitioner has shown ineffective assistance of counsel.

*"Prejudice" from Denial of Due Process and Effective Assistance of Counsel*

█ The state seeks to prevent issuance of a writ of habeas corpus, and to avoid any substantive review of petitioner's conviction, by claiming that petitioner's assertion of a right to appeal is inadequate because he has not pointed to specific grounds for appeal.[8] There are several problems with this argument. First, it is factually incorrect. In the first federal habeas action, petitioner pointed to several grounds for appeal, namely claims that the verdict was against the weight of the evidence, that he was unfairly prejudiced by pretrial publicity, and that there were improprieties in jury deliberations. Thus, petitioner has in fact suggested grounds on which he intends to seek appellate relief.[9]

The more important point is, however, that petitioner has been denied an opportunity to develop possible grounds for appeal. No one has even been able to read the transcript from his trial, which may now be lost permanently. Petitioner has long sought assistance by counsel in probing the trial record and determining meritorious grounds for constitutional challenge of his conviction. This habeas action must be viewed as preliminary to an exploration of the merits of the case.

This result is dictated by relevant authority. Recognizing that the lack of examination by competent counsel of the trial transcript makes it impossible to know what if any grounds for appeal would have been promising, courts presume prejudice rather than insisting on a specific showing thereof. *See, e.g., Rodriguez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969) (defendant deprived of right to appeal by trial counsel's failure to file notice of appeal not required to specify errors that he would have raised on appeal or demonstrate that denial of appeal was prejudicial in order to state a prima facie case warranting post-conviction relief); *United States v. Mosiman,* 604 F.Supp. 1003 (E.D. Wisc.1985) ("In supporting a claim of ineffective assistance of appellate counsel, the defendant is not required to specify the points that he would raise on appeal or to argue the likelihood of success on the merits."); *Robinson v. Wyrick,* 635 F.2d 757 (8th Cir.1981) (where counsel's failure to file proper brief resulted in finding that none of points argued had been properly preserved, petitioner was denied effective assistance of counsel, and petitioner would not be required to show that appeal was meritorious); *Grooms v. Solem,* 520 F.Supp. 1184, 1186 (D.S.D.1981), *aff'd without opinion,* 685 F.2d 436 (8th Cir.1982) (trial court's belief that to obtain relief from violation of right to appeal petitioner must specify trial errors was erroneous); *Riser v. Craven,* 501 F.2d 381 (9th Cir. 1974) (allegation that counsel failed to file appeal or tell petitioner how to do so on own behalf deprived him of effective assistance of counsel, and no showing of prejudice was required).

While the Supreme Court has not addressed precisely this issue, it has indicated that in certain circumstances prejudice is to be assumed. *See United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984) (certain types of state interference with counsel's assistance legally presumed to result in prejudice); *Cuyler v. Sullivan,* 446 U.S. 335, 345–50, 100 S.Ct. 1708, 1716–19, 64 L.Ed.2d 333 (prejudice presumed when counsel is burdened by actual conflict of interest which adversely affected lawyer's performance). In *Strickland v. Washington,* 466

---

8. The erroneous view that petitioner is required to make such a showing in order to obtain an appeal has apparently been a factor in the state's conduct throughout this case. In a letter of January 6, 1984, opposing petitioner's request for certification of the denial of post-conviction relief to the Supreme Court, the Attorney General noted that no colorable issue or demonstra-

tion of probable merit was tendered in petitioner's motion papers.

9. More recently, petitioner has submitted recantations from the prosecution's key witness in support of his claim that he was innocent. While this may not be relevant to his appeal, it could be the subject of an action to set aside the judgment of conviction.

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court explained that an important feature of the interference situation is that "[p]rejudice is so likely that case by case inquiry into prejudice is not worth the cost," *id.* at 692, 104 S.Ct. at 2067, while in the conflict situation, "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests."

Both these characteristics are present here. Failure to pursue an appeal is extremely likely to be prejudicial. However, the existence of prejudice is extremely hard to prove in the absence of review by a capable advocate of the record at trial. Thus, I find that petitioner is not required to demonstrate additional probable prejudice flowing from his failure to take an appeal.

*Affirmative Defense: Procedural Default*

The state appears to suggest that petitioner has "deliberately bypassed" the state appellate process, in favor of pursuing a litigation strategy centered on federal courts. In the alternative, the state argues that petitioner is barred from the instant action by procedural defaults in that he failed to perfect his appeal within the prescribed time periods in the state system.

Knowing and voluntary waiver, rather than "cause and prejudice," appears to be the standard for evaluating a decision to forego appeal. In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Justice Burger joined in the majority opinion signed by five justices but concurred specially, expressing the view that the *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), voluntary waiver standard had no application to decisions which were necessarily made by counsel, and indicating that he would "leave the

core holding of *Fay* where it began," and reject its extension to decisions which must be made rapidly at trial. 433 U.S. at 92–94, 97 S.Ct. at 2509–10. In *Boyer v. Patton,* 579 F.2d 284 (1978), the Third Circuit, citing Chief Justice Burger's concurrence, held that where defendant was inexperienced and confused as to his right to appointed counsel, he did not waive his constitutional objections by failure to take a direct appeal. In *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Court reaffirmed the distinction between failure to prosecute an appeal at all and failure to raise particular promising issues.[10] Thus, *Fay* still appears to apply to major strategic decisions which should be made by the defendant personally.

While the state has not suggested any conduct by petitioner indicating a waiver in the sense of a desire to forego appellate review,[11] the state appears to argue that there was a deliberate bypass, in that petitioner chose to pursue legal challenges in federal rather than state court. Given the facts of this case, the state's position is untenable. Petitioner made several efforts to verify the status of his state appeal before realizing that none had been filed. The very aim of the present habeas petition, and of the earlier one, in which petitioner also asserted denial of the right to appeal and denial of effective assistance of counsel on appeal, has been to *secure* an appeal in the state system. Petitioner has not attempted to use habeas proceedings as an alternative to direct appeal, but rather has consistently attempted to obtain access to state appellate procedures.

Moreover, the very decision by petitioner to proceed in federal court is itself the product of the state's failure to provide adequate representation in the crucial post-

**10.** The Court "express[ed] no opinion" as to whether counsel's decision not to take any appeal at all would be subject to the *Fay v. Noia* deliberate bypass standard.

**11.** The state did suggest in its January 6, 1984 opposition to the petitioner's first request for an appeal *nunc pro tunc* that "it does not appear" that defendant "contacted his counsel to request an appeal" within the requisite time period. The state pointed out that the first letters on the

record were in March, 1978. However, trial counsel testified that he believed that petitioner had indicated his desire to appeal at the time of sentencing, if not before, and that he believed that there might have been subsequent telephone conversations before the 45–day period had expired. The state simply ignores the trial judge's finding based on that evidence that petitioner did express a desire to appeal within time and did not waive the right to appeal.

conviction period. Given the federal habeas statute's exhaustion requirement and the development of that doctrine in case law by the late 1970's, it was plain that attempts to obtain review in federal court without prior efforts to exhaust state remedies would normally be futile. Had petitioner received competent legal advice, he would have been so informed. While choosing the forum in which to proceed, however, petitioner was not represented.[12]

By the time that petitioner was in contact with a lawyer, his case was already on appeal to the Third Circuit.[13] The Third Circuit apparently found the claim that exhaustion was excused by state delays sufficiently colorable to issue a certificate of probable cause permitting petitioner to appeal the denial of the writ of habeas corpus by the district court. *Cf. Booker v. Kelly*, 636 F.Supp. 319 (W.D.N.Y.1986), *aff'd without opinion*, 833 F.2d 1002 (2d Cir. 1986) (delay in appeal not equivalent of complete absence of effective state appellate process so as to excuse failure to exhaust state remedies, absent attempt by petitioner to ·obtain *coram nobis* relief in state court, but petitioner was entitled to certificate of probable cause to permit appeal on exhaustion question). The counsel appointed to assist petitioner in the federal case found it worthwhile to petition for *certiorari* to the United States Supreme Court. Thus, petitioner's initial decision to proceed in federal rather than state court stemmed from lack of proper representa-

tion, and his decision to stay in federal court was on advice of counsel. Under the circumstances, I find no deliberate bypass, and believe that petitioner should not be penalized for his belief that exhaustion could be excused under the circumstances.[14]

Petitioner's response to the state courts' denial of his motion for a belated appeal is inconsistent with any notion that he maneuvered to obtain federal as opposed to state adjudication of his claims. Rather than returning to federal court immediately once it became possible to do so, petitioner filed another motion in state court for an appeal *nunc pro tunc*, which was opposed by the state and was denied. Thus, I find the theory that petitioner knowingly and voluntarily "by-passed" state courts in preference for a federal forum to be without merit.

The claim that petitioner is barred by procedural defaults from obtaining appellate review is little more tenable. Even if the applicable standard for reviewing petitioner's failure to file a timely appeal is no longer *Fay's* knowing and voluntary waiver standards but the much more stringent standard set forth in recent cases involving procedural defaults, petitioner must prevail. Under the standards set forth by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976), a habeas petitioner who has failed to comply with state procedural rules must

---

**12.** The only indication on the record as to why petitioner sought federal habeas rather than attempting to proceed *pro se* in state court is that he indicates that a prison paralegal suggested this approach.

**13.** At the hearing on post-conviction relief, petitioner's counsel asked "between the time you were represented by Mr. Galluccio in 1977 and the time approximately a month ago when I was appointed to represent you, in between those approximately five years, was there any attorney appointed to represent you?" He responded "[n]o, sir. I was never assigned counsel." (December 10, 1982 Transcript at 24.) On cross-examination, he conceded that the Third Circuit had appointed counsel who filed a motion for him. (*Id.* at 29.)

**14.** The state argues that petitioner was put on notice as to how he should proceed by its answering papers in response to his initial petition

in federal district court for a writ of habeas corpus. This contention that convicted persons should accept and follow the legal "advice" of prosecutors is, to put it mildly, novel and unpersuasive. New Jersey had a responsibility to provide effective legal representation to petitioner in connection with his first appeal as of right; when the persons so charged failed petitioner, the state cannot argue that he had "notice" of the proper procedure by virtue of the prosecution's litigation posture. (The prosecutors' suggestion that petitioner should have followed their advice is rather ironic here, given that while it was the essence of the state's claim that petitioner continued to have access to meaningful state remedies, the prosecutor took an at best uncooperative, at worst obstructive, stance once petitioner did return to state courts.)

show cause for that failure to comply and prejudice stemming therefrom. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court clarified that where counsel's actions caused the procedural default, relief will only be available if the behavior resulting in default constituted ineffective assistance under the rigorous standards of *Wainwright v. Strickland*. Since the failure of either assigned counsel or the Public Defender to file an appeal within time or to file for an appeal *nunc pro tunc* more promptly constituted ineffective assistance, and since prejudice may be presumed under the circumstances, petitioner is entitled to relief.

*Character of Relief*

■ Where an appeal has been denied in violation of due process and Sixth Amendment rights, the normal remedy is to order the state to make available an appeal *nunc pro tunc*. *See, e.g., Macon v. Lash*, 458 F.2d 942 (7th Cir.1972) (finding that where petitioner had evidenced desire to appeal before time had expired, but no appeal was had, appropriate relief is preparation of transcript, appointment of counsel, and appeal in state system, and noting that "[i]ronically, the desire to minimize expenses by saving the cost of preparing trial transcripts has no doubt resulted in post-conviction litigation expenses far greater than the cost of the appeal itself" and that "[i]n any event, the requirements of even-handed procedures are clear"); *Joseph v. White*, 404 F.2d 322 (5th Cir.1968); *Bosler v. Swenson*, 363 F.2d 154 (8th Cir.1966), *aff'd per curiam*, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); *Garton v. U.S. ex rel. Kumitis v. Rundle*, 244 F.Supp. 894 (E.D.Pa.1965); *Spaulding v. Taylor*, 234 F.Supp. 747 (D.Kan.1964).

■ Here, however, it is not clear whether an appeal at this late date will be feasible. The state has indicated that the materials necessary to prepare complete tran-

scripts in this matter have been lost.[15] I have been informed by the Court Reporter in Passaic County that these materials were most likely lost in the summer of 1985, when asbestos removal generated chaos in storage facilities. Petitioner tried at least six years before that to obtain copies of the transcripts. In a letter dated May 14, 1979, petitioner wrote to Joel Harris at the office of the Public Defender, stating that:

> I am concerned in that I have not heard any word from this office regarding my trial transcripts, or an attorney being designated to represent me on appeal. Won't you kindly check your files and advise me 1) the date a Notice of Appeal was filed and the docket number assigned; 2) whether the complete trial transcripts have been received and if so I hereby request that a copy be made and sent to me prior to designating an attorney ...

(Exh. 17, at DA 4.)

An order was signed by Judge Meanor on March 28, 1980, at the outset of the original habeas action, directing respondents to file an answer to the petition on or before April 25, 1980, "accompanied by a certified copy of all briefs, appendices, opinions, process, pleadings, transcripts, and orders filed in the state proceedings or such of them as may be material to the questions raised in this petition." While the transcripts were arguably unnecessary in the first action, which was dismissed for failure to exhaust state remedies, this order and the pendancy of the action itself put the state on notice that transcripts were likely eventually to be required. In 1981, the Third Circuit denied a motion for preparation of transcripts without prejudice to efforts to obtain these through the state court system. At that point, petitioner was being assisted by counsel appointed to assist him with the appeal to the Third Circuit, who apparently took no action to

---

**15.** There is some question about what has happened. Lucille Olive of Open Gate Connection, who has been assisting the petitioner, spoke with a staffer at the court reporter's office in Passaic County who indicated that transcripts could be purchased for $4.00 a page, and said nothing about these transcripts being missing. See Olive Letter of November 23, 1987. The report that these transcripts cannot be created was contained in a letter of October 2, 1987, from the Passaic County prosecutor.

obtain the transcripts by motion in state court. The petitioner asserted as a final ground of error in his petition for *certiorari* before the Supreme Court that he had not been provided with transcripts. The state noted in response that a similar application to the Court of Appeals had been denied, and "relie[d] upon the arguments previously presented in reiterating its contention that petitioner's remedy, is a state court appeal not foreclosed even at this late date, during which proceeding petitioner may make application for the transcripts." (Exh. 4, Respondent's Brief in Opposition, at 10.)

In 1983, the Public Defender again began to represent petitioner in connection with the attempt to secure an appeal *nunc pro tunc*. The Public Defender ordered copies of the transcript of the hearing on the motion for post-conviction relief, see amended notice of appeal certifying that in compliance with Rule 2:5–3(a), counsel had ordered copies, but did not order the entire trial and sentencing transcripts.[16] A representation was made in the brief to the Appellate Division in support of the motion to appeal *nunc pro tunc* to the effect that "efforts are now underway to acquire transcripts of the trial." [Exh. 21 at 8 n. 2.] However, it does not appear that transcripts were ordered or prepared.

Meanwhile, rather than preparing the transcripts or even taking steps to preserve the tapes and other materials necessary to do so, the state apparently delayed until the necessary materials were destroyed. Accordingly, the normal remedy for violation of the right to appeal—permitting appellate counsel to seek error in trial transcripts—may prove impossible here. The petitioner may not be forced to undertake an appeal without transcripts or some substitute form of record adequate to prosecute that appeal. *Bundy v. Wilson*, 815 F.2d 125 (1st Cir.1987); *Oliver v. Zimmerman*, 720 F.2d 766 (3d Cir.1983), *cert. denied*, 465 U.S. 1033, 104 S.Ct. 1302, 79

L.Ed.2d 701 (1984). *Cf. Byrd v. Wainwright*, 722 F.2d 716 (11th Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 217, 83 L.Ed. 2d 147 (1984) (criminal defendant has constitutional right to transcript in order to petition state supreme court for discretionary review). If the grounds for an appeal indicate "a colorable claim for a complete transcript, the burden is on the State to show that only a portion of the transcript or an alternative will suffice for an effective appeal on those grounds." *Mayer v. City of Chicago*, 404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971); *see also Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

Since it is conceivable that the state may yet be able to find or reconstruct an adequate record to permit an appeal, I will give it an opportunity to do so, as directed by the Third Circuit in *U.S. ex rel. Cleveland v. Warden, N.J. State Prison*, 544 F.2d 1200 (1968), a case involving a trial 25 years before in which transcripts had never been prepared and the court reporters' notes had been destroyed.

In the event that a new trial is required, it is, of course, likely that the state's case will be severely prejudiced. The state's main, perhaps only, witness has recanted. However, the costs of this delay must be imposed on the state, not the petitioner. *Cf. Harris v. Kuhlman*, 601 F.Supp. 987 (E.D.N.Y.1985) (Weinstein, J.) (where court-appointed counsel had failed to perfect an appeal within seven and a half years, failure was ineffective assistance for which the state must be held responsible for purposes of application of the exhaustion requirement).

*Conclusion*

I will grant a conditional writ of habeas corpus, giving the state an opportunity to cure the due process violation either by giving petitioner an effective appeal to the appellate courts or a new trial. If one of

---

**16.** This decision by the Public Defender not to order transcripts until a motion for appeal was granted does not, contrary to the suggestion in the state's letter of January 6, 1984, constitute any sort of waiver. Transcripts would have had

to be paid for out of the Public Defender's budget. The decision on whether to order transcripts was not up to petitioner, and accordingly he cannot be penalized for failure to do so.

these conditions cannot be met, the writ must issue.