752 A.2d 724 (2000)
331 N.J. Super. 512
STATE of New Jersey, Plaintiff-Respondent,
v.
Lawrence SIMMONS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2000.
Decided June 7, 2000.
*725 John Vincent Saykanic, Designated Counsel, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Saykanic, on the brief).
Jane E. Hendry, Senior Assistant Prosecutor, for plaintiff-respondent (Ronald S. Fava, Passaic County Prosecutor, attorney; Ms. Hendry, on the brief).
Defendant-appellant filed a pro se supplemental brief.
Before Judges PRESSLER, KIMMELMAN and ARNOLD.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
In 1977 defendant Lawrence Simmons was charged, in two separate indictments, with murder and robbery. He was tried and convicted of both crimes. After an odyssey through the state and federal courts we describe hereafter, he was retried in 1996. He was then convicted of the robbery, but the jury was unable to agree on the murder charge and a mistrial on that count was declared. Defendant was again tried for the murder in 1998 and the jury was again unable to agree resulting in a second mistrial. The judge denied defendant's ensuing motion for dismissal of the murder indictment. Defendant now appeals from the 1996 robbery conviction and from the 1998 order denying his motion to dismiss the murder indictment. We affirm the judgment of conviction of the robbery, but reverse the order denying the motion to dismiss the murder indictment.
To say that the procedural history before us is tortuous hardly begins to describe it. In its most briefly stated outline, two indictments were returned in *726 1977 against defendant Lawrence Simmons and his co-defendants Donald Phillips and David Wilson. The first charged all three of them with the armed murder of Dr. David Doktor, N.J.S.A. 2A:113-1 and 2A:151-5, by bludgeoning him to death with a metal pipe. The second charged defendant and Phillips with the robbery of George Marshall, N.J.S.A. 2A:141-1. Although the two crimes were committed during the same early morning hours and allegedly within minutes of each other, they nevertheless resulted from two quite separate and distinct episodes. The indictments were, however, jointly tried by a jury in October and November 1977. The State's main witness was co-defendant David Wilson, who testified under a grant of immunity. Defendant was convicted of all charges against him. He was sentenced on December 21, 1977, to a life term for the murder and to a consecutive term of nine to ten years for the robbery. He has been incarcerated since.
Thirteen years passed before defendant's direct appeal was heard. The events during the first eleven years of that period are described in all their excruciating detail in the opinion of the Federal District Court granting defendant a conditional writ of habeas corpus. Simmons v. Beyer, 689 F.Supp. 432 (D.N.J.1988). As best as we can understand what happened, defendant's trial counsel failed to file a notice of appeal despite defendant's request that he do so. The Public Defender also failed to file a notice of appeal. Clearly that should not have affected defendant's right to file the notice of appeal nunc pro tunc when, three years later, he discovered that the notice had not been filed. See Notice to the Bar, 100 N.J.L.J. Index Page 1208 (1977), relaxing R. 2:4-4(a) to permit a nunc pro tunc filing of the notice of appeal if defendant demonstrates that he timely advised either trial counsel or the Public Defender of his desire to appeal. See also State v. Altman, 181 N.J.Super. 539, 438 A.2d 576 (App.Div. 1981), so holding. Since this court routinely follows Altman and relaxes the rule in such circumstances, we are unable to explain what actually happened here. In any event, it appears that when defendant discovered in 1980 that his appeal had not been filed, he sought the aid of the federal court, which denied his petition for a writ of habeas corpus since he had not exhausted his state remedies, namely, moving this court for leave to file his notice of appeal nunc pro tunc. The Third Circuit Court of Appeals affirmed the denial and the United States Supreme Court denied defendant's petition for certiorari. That brings us to June 1982.
Defendant's next step was the seeking of post-conviction relief in the trial court. Following a hearing, a trial judge, in July 1983, found that defendant had, in fact, made timely request for an appeal but ruled that the trial court was without authority to grant the relief of permitting the filing of a notice of appeal nunc pro tunc since only this court could grant that relief. Accordingly, in August 1983, defendant made that motion to this court. The prosecutor took no position. Inexplicably and without explanation, this court denied that motion as well as defendant's ensuing motion for reconsideration. Defendant then filed a petition for certification to the Supreme Court, which, this time, the prosecutor actively opposed. The petition was denied in November 1984. State v. Simmons, 99 N.J. 187, 491 A.2d 690 (1984). In 1986 defendant filed a pro se motion with this court seeking indigency status and, once again, leave to file his notice of appeal nunc pro tunc. The prosecutor filed opposition papers, and we denied the motion.
Defendant then once more sought the aid of the federal court, leading to the 1988 opinion in Beyer, supra, 689 F.Supp. 432. Judge Debevoise concluded, based on these events, that defendant had been deprived of his right to effective assistance of counsel as well as his right to appeal and that he was consequently then entitled to the substantive review, by way of direct appeal, of the 1977 judgment of conviction. The problem that emerged, however, was the loss of the transcriber's notes of the trial in the intervening eleven years. Recognizing that it might be possible, nevertheless, *727 to reconstruct the record for appellate purposes, the court gave the State the option of ensuring defendant's effective appeal or providing a new trial and, further, directing that if neither was done, the writ would issue unconditionally. That ruling, as we have noted, was in 1988.
Following the federal court ruling, the prosecutor, in compliance therewith, moved this court for leave for defendant to appeal nunc pro tunc and for a remand to the trial court for reconstruction of the record. Those motions were granted. The reconstruction was completed by the trial court and filed with this court in November 1988, and both this court and the Federal District Court denied defendant's motions challenging the reconstruction. In January 1989 and while the appeal was pending, defendant moved for a limited remand to the trial court in order to seek a new trial based on Wilson's then recantation of his 1977 trial testimony. We granted the motion and an evidentiary hearing ensued before the trial court, which entered an order denying the new trial motion in April 1989. Defendant then amended his notice of appeal to include a challenge to that order as well. We finally heard the appeal in April 1990, and by our 73-page opinion filed under Docket Number A-6277-87T1 on July 13, 1990, we affirmed the 1977 judgments of conviction. The Supreme Court denied defendant's petition for certification in October 1990.
After defendant had thus exhausted his state remedies, he moved once again in the federal court for the reopening of his petition for habeas corpus. The motion was granted, defendant was heard, and the writ dismissed. Simmons v. Arvonio, 796 F.Supp. 777 (D.N.J.1992). The Third Circuit, however, reversed sub nom. Simmons v. Beyer, 44 F.3d 1160 (3d Cir.), cert. denied, 516 U.S. 905, 116 S.Ct. 271, 133 L.Ed.2d 192 (1995). Noting that defendant had asserted a colorable claim that the prosecutor had used race-based peremptory challenges of prospective jurors in the 1977 trial and according defendant the retroactive benefit of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986), the Circuit Court held that the failure of the reconstructed record of the trial to include the voir dire facts and the non-retrievability of that information coupled with the inordinate delays attending final disposition of these charges required the grant of a new trial. Thus, eighteen years after the entry of the judgments of conviction, defendant was finally accorded a right to a new trial.
It took another year, however, before that new trial actually took place. First, the State sought a writ of certiorari from the United States Supreme Court, which was denied, and then, pursuant to the Third Circuit reversal, the Federal District Court issued an order vacating its denial of the petition for the writ and ordered defendant either tried or released. Finally, the trial commenced in mid-1996, and defendant was again convicted of the robbery charge and sentenced to a fifteen-year prison term, which he had by then served in full. Although Wilson gave his recanting testimony, the jury was unable to agree on the murder charge, and a mistrial thereof was declared and a new trial ordered.
It is now nearly four years later. Insofar as we are able to determine, defendant filed a timely notice of appeal from the robbery conviction. While the appeal was pending, a third trial of the murder charge was scheduled following denial of defendant's motion to dismiss the indictment. Commencement of trial was, however, delayed until October 1998 because of substitutions of counsel for defendant and intervening federal proceedings by which defendant sought unsuccessfully to have the murder indictment dismissed. In any event, at this third trial of the murder indictment, now twenty-one years after the crime, Wilson recanted his recantation. Nevertheless, the jury was still unable to agree, and a second mistrial was declared. Defendant then moved the trial court for dismissal of the murder indictment. That motion was denied.
At this point considerable confusion developed resulting, at least in part, from *728 defendant's efforts to obtain recourse simultaneously from the state court and the federal court. To begin with, he moved in this court for an order dismissing the murder indictment entered after the 1998 mistrial. Although we denied the motion, we entered an order permitting the notice of appeal from the 1996 robbery conviction to be amended to include a challenge to the 1998 order denying the motion to dismiss the indictment. At the same time, defendant sought relief in the federal court from the same 1998 order, and we have been advised that defendant's petition for a writ of habeas corpus is now pending in the Third Circuit. Unfortunately, however, and apparently as the result of some miscommunication between defendant's counsel and the Clerk's office, defendant did not file a supplementary brief with this court addressing the 1998 order. At the time of oral argument, therefore, we were unaware that a second mistrial had taken place and the briefs did not address the import of the 1998 mistrial. We cannot, however, ignore the fact of the 1998 mistrial because of the obvious effect it has on defendant's right to a dismissal of the murder indictment. A conviction followed by two hung juries is a very different proposition from a conviction followed by only one. The parties were thus given the opportunity to file supplementary briefs addressing the State's right to try defendant on the murder charge for a fourth time under all the circumstances we have here recited.
As the matter now stands then, what is presently before us is, first, the question of whether the State may be permitted to retry defendant a fourth time for the murder, and second, whether the robbery conviction resulting from the 1996 trial is sustainable. We conclude that while the robbery conviction was not infected by any reversible error, the murder indictment must now be dismissed.
We address first the murder indictment. The standards and considerations informing the granting of a motion to dismiss an indictment following multiple hung juries are articulated by State v. Abbati, 99 N.J. 418, 435, 493 A.2d 513 (1985), in which the Court ruled as follows:
We hold that a trial court may dismiss an indictment with prejudice after successive juries have failed to agree on a verdict when it determines that the chance of the State's obtaining a conviction upon further retrial is highly unlikely. The trial court must carefully and expressly consider the following factors, which shall govern its ultimate decision whether to dismiss the indictment: (1) the number of prior mistrials and the outcome of the juries' deliberations, so far as is known; (2) the character of prior trials in terms of length, complexity, and similarity of evidence presented; (3) the likelihood of any substantial difference in a subsequent trial, if allowed; (4) the trial court's own evaluation of the relative strength of each party's case; and (5) the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney. The court must also give due weight to the prosecutor's decision to reprosecute, assessing the reasons for that decision, such as the gravity of the criminal charges and the public's concern in the effective and definitive conclusion of criminal prosecutions. Conversely, the court should accord careful consideration to the status of the individual defendant and the impact of a retrial upon the defendant in terms of untoward hardship and unfairness.
Unfortunately, when the motion to dismiss the indictment after the second mistrial was argued, neither counsel referred explicitly to Abbati and neither did the trial judge although he referred at least tangentially to some of the Abbati factors. This is what he said:
[There] has been some difference in terms of the trial in 1996, and the instant matter [the 1998 trial]. Certainly there was additional material in evidence that was adduced during the trial of 1977. In that matter many individuals *729 who testified are now unavailable as a result of death or other incapacity, but the fact is that the State apparently is representing that it has chosen to retry this defendant and I believe under the law should have that opportunity.
I think the State is correct, there should be some finality, some closure as far as defendant is concerned, the State is concerned and by that I mean the victim or victims in this particular case. I'm of the opinion that the defendant has presented nothing on the record which would warrant this Court [to] grant him the relief which he's seeking, namely, a dismissal of the indictment and for that motion, the motion for a dismissal is denied.
We agree with the State that ordinarily the failure of the trial judge to consider and weigh the Abbati factors would require a remand to the trial judge for that purpose. Indeed, Abbati itself so held. Abbati, supra, 99 N.J. at 436-437, 493 A.2d 513. We do not regard this case, however, as ordinary. We are persuaded that the inordinate length of time that has passed since the first trial, defendant's incarceration for the last twenty-three years, his eligibility for parole long since had the original conviction been affirmed,[1] and, most significantly, the clarity with which the issue presents itself, impel us to exercise our original jurisdiction pursuant to R. 2:10-5 in the interests of justice.
The conceptual basis of Abbati is fundamental fairness and substantial justice. Id. at 427, 430, 493 A.2d 513. The core of the Abbati rationale in our view is that when the prosecution, resorting substantially to the same evidence, fails repeatedly to persuade all members of the jury of defendant's guilt beyond a reasonable doubt, it cannot keep trying the same case again and again. As Justice Handler summarized it:
The anxiety, vexation, embarrassment, and expense to the defendant of continual reprosecution where no new evidence exists is a proper subject for the application of traditional notions of fundamental fairness and substantial justice.

[Id. at 430, 493 A.2d 513.]
Thus the basic prosecutorial abuse the Court was addressing in Abbati was the repeated effort to obtain a conviction after multiple juries, presented with the same proofs, are unable to reach a verdict. In short, Abbati permits the trial court to tell the prosecutor that those proofs, after repeated testing in the crucible of jury deliberations, are not likely ever to result in a conviction, and he must, accordingly, stop trying to obtain it.
We think it plain that since the prosecutor has twice, once nineteen years after the crime and once twenty years after the crime, failed to obtain a conviction, there is little likelihood that he will on a third attempt. We note first, as we have pointed out, that in 1977 the State's case relied primarily on co-defendant Wilson's testimony. In 1996 the jury was not persuaded of defendant's guilt after considering Wilson's recantation testimony, and in 1998, a second jury was not persuaded after considering Wilson's recantation of his recantation. Moreover, critical witnesses who testified at the 1977 trial were unavailable in 1996 and 1998, and will continue to be unavailable. One of the detectives who had originally taken Wilson's statement has died. Another police officer involved in the original investigation is unavailable because of a heart condition. A State's forensic witness, Dr. Counbis is deceased. The allegedly blood-free clothes defendant was wearing on the night of the murder are missing. There are no transcripts of the 1977 trial for use either as substantive evidence or impeachment. And although we asked the State to submit *730 a supplementary brief on the Abbati issue, it has not suggested to us any way in which the proofs at yet a third retrial would be materially different. In sum, we are satisfied that the likelihood of a conviction following a fair retrial is altogether too remote to warrant yet another prosecution almost a quarter of a century after the crime was committed.
We consider seriatim the remaining Abbati factors. With respect to the first factor, there have already been two hung juries. The State represents to us that the jury vote in both was the same, namely, eight to convict and four to acquit. Clearly, then, the State did no better in juror persuasion the second time. With respect to the second factor, the quality and character of the trials, all three were lengthy and complex, except the proofs, because of the problems due to the delay of nineteen years between the first and second trials, were substantially abbreviated, the loss of proofs apparently prejudicing both sides. We have already discussed the third factor, namely, the likelihood of prosecutorial success in another trial. As to the fourth factor, the trial court made no evaluation of the relative strength of each party's case, but we think it plain from what we have already said, that the State's case gets no better. The fifth factor is professional conduct and diligence. We need only say that from the date of the 1977 conviction, the pursuit of the right to appeal, the appeal process, and the scheduling of the two retrials, were all inordinately delayed, and very little of that delay can be laid at defendant's door even though much of it was apparently contributed to by the public defender as well as the prosecutor and indeed the judicial process itself.
We turn then to Abbati`s unenumerated factors. We appreciate the gravity of the offense. This was a brutal fatal beating of an elderly doctor on his way to render emergency assistance at the hospital. The crime was heinous and unforgivable, and the ensuing community outrage as well as the prosecutor's desire to bring the murderer to justice were entirely justified. But the prosecutor has not been able to do so despite the original overturned conviction, and the fact remains that defendant has already been incarcerated for twentythree years, a period of time approximating the time he would have served if his guilt had been proven. If he is innocent, this protracted incarceration would be tragic and unjust in the extreme. If he is guilty, he can be regarded as having served his time. Another trial in all these circumstances is not likely to serve the interests of justice. It would be much more likely to result in an unjustifiable impact upon defendant, more pain to all those who were then involved, and considerable expense and burden to the State. The prosecutor does not want defendant to go free while the question of his guilt or innocence remains unresolved. We appreciate and sympathize with that motive. It is simply not enough, however, to justify another trial under Abbati principles in the undisputed circumstances here.
Although we need not consider defendant's other objections to the denial of his motion to dismiss the murder indictment, he has raised a number of challenges to the 1996 robbery conviction. They are as follows:
I. THE CONVICTION UNDER INDICTMENT 970-77 MUST BE REVERSED AND BOTH INDICTMENTS 970-77 and 737-778 MUST BE DISMISSED WITH PREJUDICE AND THE STATE BARRED FROM RETRYING DEFENDANT AS THE STATE'S CONDUCT THROUGHOUT THE HISTORY OF THIS CASE SHOCKS ALL PRINCIPLES OF FAIRNESS, DUE PROCESS AND JUSTICE; DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS HAVE BEEN VIOLATED AND WILL BE VIOLATED FURTHER IF HE IS TRIED AGAIN.
*731 II. THE EXCESSIVE DELAY IN THE PROSECUTION OF THE DEFENDANT ON BOTH INDICTMENTS CONSTITUTES A VIOLATION OF HIS SIXTH AMENDMENT SPEEDY TRIAL AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS, MANDATING DISMISSAL OF THE INDICTMENTS WITH PREJUDICE.
III. THE PROSECUTOR EXCEEDED ALL BOUNDS OF PROPRIETY IN HIS CLOSING ARGUMENT AND DEPRIVED DEFENDANT OF HIS SIXTH AMENDMENT AND FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL AND STATE CONSTITUTIONAL RIGHT TO A FAIR TRIAL MANDATING A REVERSAL OF HIS CONVICTION.
IV. DEFENDANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY AND DENIED HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL DUE TO A LACK OF POTENTIAL AFRICAN-AMERICAN AND OTHER MINORITY JURORS WHICH RESULTED IN AN ALL-WHITE JURY CONVICTING DEFENDANT; AFRICAN-AMERICANS AND OTHER MINORITY JURORS WERE IMPROPERLY EXCLUDED FROM THE JURY.
V. THE PROSECUTOR IMPROPERLY INVESTIGATED AFRICAN-AMERICAN VENIREPERSONS IN VIOLATION OF DEFENDANT'S SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY AND DUE PROCESS RIGHT TO A FAIR TRIAL MANDATING A REVERSAL OF HIS CONVICTION.
VI. THE COURT BELOW REFUSED TO DISMISS CERTAIN VENIREPERSONS WHO SHOULD HAVE BEEN EXCUSED FOR CAUSE; DEFENDANT WAS DENIED HIS RIGHT TO AN IMPARTIAL JURY IN VIOLATION OF THE SIXTH AMENDMENT.
VII. THE COURT BELOW VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY BY DISMISSING THE ONLY AFRICAN-AMERICAN JUROR OVER DEFENDANT'S OBJECTION.
THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN THE MANNER IN WHICH HE REPLACED THE DISMISSED JUROR WITH AN ALTERNATE JUROR AND IN THE MANNER IN WHICH HE SUBSEQUENTLY INSTRUCTED THE JURY.
IX.THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY NOT CONDUCTING A PROPER AND THOROUGH VOIR DIRE AS REQUESTED BY THE DEFENDANT IN VIOLATION OF DEFENDANT'S SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY AND TO DUE PROCESS OF LAW; DEFEN DANT'S CONVICTION MUST BE REVERSED.
*732 X. OTHER ERRORS OCCURRED DURING THE JURY SELECTION PROCESS WHICH DEPRIVED DEFENDANT OF HIS SIXTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL JURY AND FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.
XI. DEFENDANT WAS DENIED HIS CONSTITUTIONAL CONFRONTATION AND DUE PROCESS RIGHTS BY THE ADMISSION OF HEARSAY STATEMENTS OF 1) CO-DEFENDANT PHILLIPS MADE TO DETECTIVE RAFFERTY; 2) HEARSAY STATEMENTS OF PHILLIPS ELICITED THROUGH DAVID WILSON WHICH INCULPATED PHILLIPS IN THE MARSHALL MUGGING; AND 3) HEARSAY STATEMENTS OF GEORGE MARSHALL MADE TO OFFICER SEIDEL (U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947), ART. I, PARAS. 7 AND 10.
XII. THE COURT BELOW COMMITTED REVERSIBLE ERROR BY PERMITTING THE STATE TO ELICIT THAT CO-DEFENDANT PHILLIPS HAD BEEN NAMED AS A SUSPECT IN ANOTHER ROBBERY.
XIII. INDICTMENT NO. 970-77 (MARSHALL MUGGING) SHOULD HAVE BEEN DISMISSED WITH PREJUDICE DUE TO THE STATE'S PRESENTATION OF FALSE TESTIMONY / EVIDENCE AND DUE TO THE FAILURE BY THE STATE TO INCLUDE EXCULPATORY EVIDENCE IN VIOLATION OF DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS.
XIV. INDICTMENT NO. 737-77 (DOKTOR HOMICIDE) SHOULD HAVE BEEN DISMISSED WITH PREJUDICE ON THE GROUNDS THAT THE GRAND JURY HEARD ONLY AN UNRELIABLE HEARSAY STATEMENT OF DAVID WILSON WHICH WAS LATER RECANTED.
XV. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN HIS CHARGE TO THE JURY CONCERNING THE INSTRUCTION AS TO AIDING AND ABETTING REGARDING THE MARSHALL INDICTMENT.
XVI. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN HIS CHARGE TO THE JURY AS TO THE IMMUNITY GIVEN TO DAVID WILSON.
XVII. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY REFUSING TO INSTRUCT THE JURY AS TO THE CHARGE OF "PROMISE OF REWARD."
XVIII. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY REFUSING TO GIVE THE DEFENDANT'S REQUESTED CHARGE ON THE DEFENDANT NOT TESTIFYING AT TRIAL.
XIX. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY INSTRUCTING THE JURY, OVER DEFENDANT'S OBJECTION, THAT DEFENDANT HAD BEEN INCARCERATED FOR THE PAST NINETEEN YEARS.
XX. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN DETERMINING THAT OFFICER DENNIS *733 MICKS WAS AN "UNAVAILABLE" WITNESS AND PERMITTING HIS PRIOR TESTIMONY TO BE READ INTO THE RECORD; DEFENDANT'S SIXTH AMENDMENT CONFRONTATION RIGHT AND DUE PROCESS RIGHT TO A FAIR TRIAL WAS VIOLATED, MANDATING A REVERSAL OF HIS CONVICTION.
XXI. THE TRIAL JUDGE DEPRIVED DEFENDANT OF HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL BY THE IMPROPER ADMISSION OF TESTIMONY RELATING TO THE DEFENDANT'S HEARTBEAT.
XXII. THE TRIAL JUDGE VIOLATED DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL AND SIXTH AMENDMENT CONFRONTATION RIGHTS WERE VIOLATED BY PERMITTING TRANSCRIPTS FROM PRIOR PROCEEDINGS TO BE READ INTO THE RECORD.
XXIII. DEFENDANT WAS DENIED HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL BASED UPON THE IMPROPER QUESTIONING OF WILSON'S FORMER LAWYER, TERRENCE CORCORAN, BY THE PROSECUTOR.
XXIV. THE COURT BELOW ERRED IN NOT RECUSING ITSELF DUE TO THE APPEARANCE OF IMPARTIALITY AND BIAS AND BECAUSE A REASONABLE PERSON WOULD HARBOR DOUBTS ABOUT THE JUDGE'S IMPARTIALITY.
In his pro se brief, defendant raises the following points:
I. BOTH INDICTMENTS SHOULD HAVE BEEN DISMISSED AS THERE IS NO INDICATION OF THE MANNER IN WHICH THE GRAND JURORS WERE INSTRUCTED.
II. INDICTMENT NO. 970-77 (MARSHALL MUGGING) SHOULD HAVE BEEN DISMISSED SINCE THE DEFENDANT AT TIME OF TRIAL HAD ALREADY SERVED THE ENTIRE SENTENCE.
III. THE JUDGE ERRED IN GRANTING THE STATE'S MOTION TO CONSOLIDATE INDICTMENT NOS. 737-77 AND 970-77; THE TWO INDICTMENTS SHOULD HAVE BEEN TRIED SEPARATELY.
IV. DEFENDANT SIMMONS'S MIRANDA RIGHTS AND FIFTH AMENDMENT CONSTITUTIONAL AND NEW JERSEY STATE COMMON LAW PRIVILEGES AGAINST SELF-INCRIMINATION WERE VIOLATED; THE ADMISSION OF ALLEGED STATEMENTS MADE BY THE DEFENDANT CONSTITUTES REVERSIBLE ERROR.
V. THE OUT-OF-COURT IDENTIFICATIONS OF DEFENDANT CONSTITUTE A DENIAL OF DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT; THE OUT-OF-COURT IDENTIFICATIONS SHOULD HAVE BEEN SUPPRESSED AND THE CONVICTION MUST BE REVERSED.
*734 VI. THE COURT BELOW ERRED IN NOT MOVING THE CASE OUT OF PASSAIC COUNTY OR, IN THE ALTERNATIVE, A FOREIGN JURY SHOULD HAVE BEEN IMPANELLED DUE TO PRE-TRIAL PUBLICITY.
VII. DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED DUE TO THE JURY HEARING THE PREVIOUSLY RULED INADMISSIBLE TESTIMONY OF DR. MICHELE YACCO.
VIII. DEFENDANT'S DISCOVERY AND DUE PROCESS RIGHTS WERE VIOLATED REGARDING DONALD PHILLIPS'S TESTIMONY, AND REGARDING DAVID WILSON.
IX. DEFENDANT'S STATE DISCOVERY RIGHTS AND DUE PROCESS RIGHTS WERE VIOLATED BY THE STATE A REVERSAL OF THE CONVICTION AND DISMISSAL OF BOTH INDICTMENTS (U.S. CONST., AMENDS. VI AND XIV; N.J. CONST. OF 1947, ART. 1, PAR. 10.)
X. THE TRIAL JUDGE ERRED IN ADMITTING INADMISSIBLE AND HIGHLY PREJUDICIAL PORTIONS OF THE POLICE DISPATCH TAPE; AND ERRED IN ADMITTING THE TAPE ITSELF.
XI. THE COURT BELOW ERRED IN NOT DISQUALIFYING THE PASSAIC COUNTY PROSECUTOR'S OFFICE FROM THE CASE.
XII. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR AND DEPRIVED DEFENDANT OF HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL BY ADMITTING OBJECTIONABLE TESTIMONY OF THE STATE'S EXPERT DR. VAN VOOREN.
XIII. DEFENDANT'S RIGHTS WERE VIOLATED DUE TO MISREADING OF TRANSCRIPTS, MANDATING A REVERSAL.
XIV. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE AUTOPSY PHOTOGRAPHS OF THE DECEASED IN VIOLATION OF DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.
XV. THE TRIAL JUDGE ERRED IN REFUSING TO GRANT A JUDGMENT OF ACQUITTAL IN FAVOR OF DEFENDANT AS TO ALL COUNTS; THE STATE FAILED TO ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND STATE CONSTITUTION.
XVI. DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED BY THE MANNER IN WHICH TESTIMONY WAS READ BACK TO THE JURY, MANDATING A REVERSAL.
XVII. THE COURT BELOW ERRED IN PERMITTING THE TESTIMONY OF DETECTIVE RAFFERTY TO BE READ BACK IN THE MANNER IN WHICH IT WAS.
XVIII. NUMEROUS LEGAL ERRORS OCCURRED WHICH DEPRIVED DEFENDANT *735 OF HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL, MANDATING A REVERSAL.
We have considered each of these issues insofar as they relate to the 1996 robbery conviction in the light of the record, the applicable law, and the arguments of counsel, and we are satisfied that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
The judgment of conviction for robbery is affirmed. We remand to the trial court for entry of an order dismissing the indictment for murder.
NOTES
[1] As we have noted this was a Title 2A murder conviction on which a sentence of life imprisonment was imposed. With commutation time, defendant could have been parole eligible in fourteen years. See State v. Maxey, 42 N.J. 62, 66, 198 A.2d 768 (1964), so construing repealed N.J.S.A. 30:4-123.11. Thus, even with the nine to ten-year consecutive robbery sentence, defendant could have been parole eligible long before now since repealed N.J.S.A. 30:4-123.10 provided for parole eligibility on a fixed term after service of one-third of the sentence less commutation time.